No. 12,550.

## MUTUAL BUILDING AND HOMESTEAD ASSOCIATION VS. FIDELITY AND DEPOSIT COMPANY OF MARYLAND.

1. The owner contracting with two partners for the erection of a building will not be deemed to discharge one of the contractors simply because they dissolve their partnership, and the owner makes one of the payments to the partners charged by the dissolution with the completion of the building contracts of the firm and authorized by the other partner to receive such payment. Novation is never presumed and the discharge of neither of the contractors can be inferred from the owner's action. Civil Code, Arts. 2185, 2186, 2190, 2192 *et seq.*

2. Nor will the consent of the owner in such case to the abandonment by one of the contractors be inferred, no such consent having been asked or granted and both contractors remaining bound to the owner.

3. The contract of suretyship will not be deemed avoided under the stipulation of notice to the sureties of any act of the building firm for whose performance of their contract the sureties bind themselves, because the sureties are not apprised of the dissolution of the building firm, the firm remaining bound after as before the dissolution for the fulfilment of their contract, and notice having been given of the subsequent abandonment by the firm of their contract work.

*On Rehearing.*—None of the rights of the defendant were injuriously affected by the acts of plaintiff, who was the obligee of a bond given to secure an obligation of contractors under a building contract.

APPEAL from the Civil District Court for the Parish of Orleans. *Monroe, J.*

---

*J. Zach. Spearing* for Plaintiff, Appellant.

---

*Purnell M. Milner (Harry H. Hall*, of Counsel), for Defendant, Appellee.

---

Argued and submitted December 18, 1897.
Opinion handed down January 10, 1898.
Rehearing granted February 7, 1898.
Submitted on briefs March 7, 1898.
Opinion handed down March 21, 1898.

---

The opinion of the court was delivered by

MILLER, J. This suit was brought on the contract of defendants by which they bound themselves as sureties for the faithful performance of the engagement of Anderson & Allen to build a house for

the plaintiff. The petition in substance avers the failure of the contractors, Anderson & Allen, to complete the building; that plaintiffs had to finish it at an expense exceeding the price stipulated to be paid the contractors; that laborers and furnishers of materials in consequence of the default of the contractors have recorded liens against the building; that under defendants' suretyship they are bound to pay the excess upon the contract price of plaintiff's expended to finish the building, are bound also to have the liens against the building canceled, and the petition claims judgment accordingly; the defence is, in effect, that the suretyship became void because the plaintiff, with knowledge that the contractors for the building had dissolved their partnership after they commenced the building, failed to communicate that dissolution to defendants; that after the dissolution plaintiffs made a payment to one of the contractors who, under the agreement with his partner, was to complete the building begun by both; that plaintiff assented to the continuance of the work by one only of the contractors, and because the plaintiff failed to record the building contract as required by the Act No. 180 of 1894. From the judgment against plaintiffs they prosecute this appeal.

The building contract was made on the 27th August, 1895. On the 19th October in the progress of the work the third payment became due to the contractors and on the demand of one of them, and the exhibition of the agreement of dissolution with his partner authorizing plaintiff to pay the partner making the demand, they made that payment; a day or two afterward plaintiffs were informed by their supervising architect that the contractor receiving the payment had left the city, that the workmen on the building were unpaid and had quit work; thereupon there was some discussion between plaintiff and the other contractor with reference to the completion of the building by him; in these discussions the agent of defendants took part, but after a few days this effort to secure the completion of the building failed, and on the 25th October, as we read the record, defendants were notified in writing by the plaintiffs of the abandonment of the work by the contractors, and plaintiffs demanded that defendants under their suretyship should take charge of and complete the building; defendants replied they had been discharged of all liability and this suit followed.

The argument for the defendants insists there was a change by the

plaintiffs in their contract with Anderson & Allen, by which defendants, as sureties, were discharged, and in this connection we have the citations of the authorities affirming the principle that any material change by the act of the creditor of the surety's contract will discharge him, entitled as he is, to stand on the contract as he made it.   Brandt on Suretyship, pp. 93 and 94.   The application of this principle the argument supposes is found in the fact that plaintiff made the third payment to Anderson & Allen after the dissolution of their partnership had become known to plaintiffs.   On that dissolution known to plaintiff and their payment to Anderson rest the defendants' argument that plaintiffs have varied the surety's contract by discharging Allen.   The plaintiffs certainly are not responsible for the dissolution of Allen & Anderson.   The payment to Anderson was due when the plaintiffs were called on; there had been no default and the erection of the building was then in progress.   In the dissolution Allen, binding himself to finish all the firm's contracts, was fully authorized to collect money due the firm.   Plaintiffs naturally required evidence of Anderson's authority to receive; that was furnished, and after consulting their counsel made the payment.   In our view the plaintiffs were bound to pay, and we can not perceive that in paying what was due, and could not have been withheld, the plaintiffs have lost their recourse on defendants as sureties of Anderson & Allen.   The knowledge of plaintiffs of the dissolution, and that Anderson had bound himself to finish all the work of the firm and the payment to Anderson, did not imply that the plaintiffs discharged Allen.   No such discharge was asked or granted; and if asked, we are authorized to infer from the ordinary modes of human action, would certainly have been refused.   We find no basis in plaintiffs' conduct on which to base a discharge of Allen, and the law forbids the implication of such discharge unless it clearly results from the conduct of the parties.   C. C., Arts. 2185, 2196, 2186, 2192 *et seq.* In our view both partners remained bound to plaintiffs after as before the dissolution.   Nor do we understand that Allen ever claimed the discharge his sureties now insist was granted him, and with the most careful consideration we are unable to deduce that discharge from the intercourse of the parties.   The surety is discharged when by the act of the creditor, the subrogation to all his rights against the principal for whom the surety is bound can not be transferred to him by subrogation.   C. C., Art. 3061.   In our view

all plaintiffs' rights against Allen are intact, and will pass to defendants when they pay the debt.

It is earnestly pressed on us that the sureties were discharged by the alleged non-compliance of plaintiffs of the stipulation in the defendants' contract requiring immediate notice to them of any fact that might result in loss to defendants. The answer avers that plaintiffs failed and neglected to notify the defendants of the dissolution of the firm of Anderson & Allen; or of plaintiffs' acting on the dissolution or of their consent to the continuance of the work by Anderson alone, or of the third payment to him and his receipt for the payment. Of course, if there had been any consent of plaintiff to the continuance of the work alone by Anderson and the discharge of Allen, the effect of that discharge would make unimportant the question of notice. The plaintiffs had no agency in bringing about the dissolution or control over it. No consent on their part was given or asked to the continuance of the work by Anderson. All the plaintiffs did was to make the third payment to him which, in our view, they were bound to make, and the payment carries no assent to that dissolution or continuance of the work by Anderson. The argument for the defendants in its other aspect is that the dissolution should have been notified on Saturday, the 19th October, when brought to plaintiffs' knowledge. On this branch of the case our attention has been called to the full cognizance of all the facts by defendants' general agent here, and to the part taken by him in the efforts to have the building completed by Anderson. Again, it is contended that no possible harm could result to defendants, because they were not notified on Saturday, the 19th, or Monday, the 21st. In this connection the knowledge of their agent is insisted upon and it is also urged that on the 25th October all attempts to secure the finishing of the building having failed, defendants had written notice of the condition accompanied with the demand they should take charge of and complete the building. The answer of defendants to all this, is that the knowledge of their general agent here on the spot is not their knowledge, and irrespective of any other question they are entitled to stand on the letter of their contract of written notice to them. If we are to accept this view at least plaintiffs are entitled to a fair construction of the stipulation as to notice. They insist the contract placed no such duty on them as defendants' argument exacts. The contract does not define " disso-

lution '' or specify any fact that is to be notified. The stipulation is notice of any fact that might cause loss to defendants. Allowance then is to be made in construing the stipulation of that appreciation the plaintiffs naturally might place on the dissolution under all the circumstance brought to their notice. With both the contractors bound, no release of either sought or given; the work still progressing and no default having occurred, plaintiffs might well suppose no loss to defendants was impending. Are they to lose their bond and defendants to go free of all liability, because under these circumstances defendants were not notified of the dissolution? It is quite certain plaintiffs themselves had no appreciation that the dissolution, confined in its effect to the partners, not freeing either from their obligation to plaintiffs or to defendants, menaced any loss to them or to defendants. The plaintiffs seem to have had the confidence when they made the third payment and after they consulted counsel that the work would be executed. After Anderson left the work and the effort to have it completed by Allen failed owing to his want of means, the defendants were notified in writing. It seems to us this was all that could with reason be expected of plaintiffs. We do not feel at liberty to construe this contract of suretyship so as to avoid it, upon that import the defendants insist should have been attached by plaintiffs to the notice of dissolution given them, when the fact thus made known under all the circumstances, neither impressed the plaintiffs or was of a character to impress them as requiring any notice to defendants. If this stipulation of written notice now invoked by defendants to avoid their contract is so worded as to leave the fact to be notified open to reasonable interpretation by plaintiffs, they are not, it seems to us, to forfeit their right on the bond, merely and only because they did not give immediate written notice of the dissolution, but contented themselves with written notice of the failure to complete the building by the contractors and the demand that defendants should take charge of it and fulfil their contract. We think the notice to defendants given by plaintiffs was timely and sufficient.

Another defence is that plaintiffs failed to record their building contract as required by the act of 1894, providing that the owner must require security from the contractor for payment of the laborers on the building and of the material men; reserving their right to record their bills and thus secure their privileges, and pro-

viding that the owner shall be responsible for all balances due the workmen and material men if the contract is not recorded. The deduction in defendants' brief seems to be that by the failure to record the contract the defendants can not be subrogated to the privileges on the building of the workmen and material men. The building as we understand it belongs to plaintiffs. As against plaintiffs' right to recover on their bond, we do not see how defendants could urge any privileges acquired against the plaintiffs' property. If defendants paid any of the workmen or material men, the amounts might well be deemed payments *pro tanto* on the bond. We do not perceive, however, the bearing of the failure to record the building contract, on the issue of plaintiffs' right to recover the excess over the contract price, the plaintiffs have paid to finish the building. The omission to record may have some pertinence to other questions between these parties, we do not propose to dispose of in this controversy.

We find no evidence in this record that the plaintiffs have paid any of the privileges that appear to have been recorded against the building after Anderson abandoned the work. It may be that the owner not having paid the contractors by anticipation, is not liable for any of the recorded claims, and it may be that the building is not subject to any such privileges. We therefore find no basis on which the sureties can be held for any of the privilege claims, and the recovery must be restricted to the amount claimed for finishing the building.

It is therefore ordered and adjudged that the decision of the lower court be annulled and reversed, that plaintiffs do have and recover from defendants one thousand and ninety-eight dollars and twenty-five cents with legal interest and costs, and as to the privileges recorded against the property for which judgment is claimed in the petition, that there be judgment of non-suit.

## ON APPLICATION FOR REHEARING.

BREAUX, J. The appellant takes it for granted that the court assumed that it as surety was not discharged for the reason that, under the articles of the Code, no such discharge could be claimed.

That having thus assumed to determine the relations of the parties (exclusively with reference to the articles of the Code relative

to sureties), the court overlooked entirely the express contractual stipulations of the act of suretyship.

We must enter a kindly denial to that suggestion.

It is true that, interpreting the different articles of the Code, we held substantially that it was a question of subrogation. That upon the obligee of the bond was imposed the obligation to protect all the securities in order that upon payment of the bond by the security it would become subrogated to all of the right plaintiff had against the principals (the contractors) of the bonds. Had the plaintiff failed to guard all of its right as payee of the bond, it would not have been in its power to transfer to the security upon payment the right which the law provides a security should have upon payment of the principal obligation. There was no negligence committed on the part of plaintiff and no act done, if the articles of the Civil Code alone be considered, which in the least impaired the rights of the securities against the principals on the bond. But we did not, as apprehended by the defendant, overlook the stipulations contained in the contract of suretyship between plaintiff and defendant. The agreement of the contractors, principals on the bond, was personal to themselves, and the fact that one continued with the work under the contract and the other chose to transfer to him his right, was not an agreement in which the plaintiff was concerned, or to which it was in any respect a party. A few days after the agreement between these contractors, one of them applied for an amount due.

The work having been done satisfactorily, the amount was paid.

The workmen of these contractors had not been paid. They had the mechanic's privilege on the building. One of the conditions of this bond was to secure the plaintiff against the claim of " subcontractors, laborers, mechanics, workmen and furnishers."

The payment to the contractor who remained (as the plaintiff's officers evidently thought) to continue in good faith with the work of building, was made at the time agreed upon among all parties concerned. It appears that neither of those contractors were in good faith—one was as anxious as the other to abandon the contract and one was as indifferent as the other about paying their employees and workmen. The object of the bond was to protect plaintiff from any failure on the part of the contractors to pay these very claims.

These propositions are not at this time disputed by the defendant.

The contention, now, is limited to the contract itself as being more far reaching than the articles of the Code upon the subject, particularly as to the necessity of notice of the dissolution of the asserted partnership.

It is clear in our judgment the contract provided the surety should be notified in writing of any act which might involve a loss. Upon this branch of the case we note that the contractors individually and without suggesting a partnership signed the contract. The bond also, subsequently furnished, was signed individually, save that in the body of the bond the principals referred to themselves as copartners. When one of the partners came to collect the third instalment he produced in support of his right to collect, a copy of the agreement dissolving the partnership authorizing him to collect amount due the partnership, which had been signed a few days previous. The payment made by the plaintiff to the contractor was made to him as to one authorized, as he was, to receive payment. This payment did not have the effect of prejudicing the rights which the defendant had. They remained unaffected; the amount was due. A few days after the plaintiff was notified, as required by the contract of suretyship. It is not evident that the delay caused a loss or that the necessity of giving notice was such as to render it imperative on the part of the plaintiff to give immediate notice. It appears that everything was done in the utmost good faith until the day that contractors abandoned the work.

We have seen that immediately after the final abandonment of the building, the notice was given. We think there was a substantial compliance with the contract.

Heretofere our decree granted compensation for the services of plaintiff's attorney.

We have given this claim further attention and after some consideration have concluded to reduce the amount of the fee.

Our decree established that plaintiff was entitled to five hundred and ninefy-eight dollars plus counsel fee.

In view of this amount and the services rendered in the case, we think that the fee should be considerably less.

There was another question, that relating to other claims recorded against the property, but not sufficiently proven on the trial to sustain a decree. The matter is argued by the plaintiff in the reply

brief of its counsel. We have found no reason on this score to change our previously rendered opinion.

It is therefore ordered, adjudged and decreed that the attorney's fee heretofore allowed be reduced to one hundred dollars.

It is further ordered and decreed, after this deduction and amendment, that our prior decree be reinstated.

The opinion heretofore rendered, and the decree are made the opinion and decree of the court, after deduction and amendment as above.